[Filed March 31, 1891.]

## J. M. STOTT *v.* JAMES FRANEY ET AL.

ASSIGNMENT OF THE RIGHT TO RECEIVE CITY WARRANTS TO BE ISSUED IN FUTURE—
    EQUITY JURISDICTION.—A contractor to do work on the streets of a city may
    assign his right to receive the warrants for such work, and such assignment
    creates an equitable interest in such expectancy, which a court of equity will

protect by decreeing the delivery of the warrants when issued. The interest created by such an assignment is equitable, not legal.

PRESIDENT OF EAST PORTLAND COUNCIL—SECTION 15 OF CHARTER, 1885.—This provision of the charter of the city of East Portland does not prevent the president of the council from taking an assignment of the right to receive warrants to be issued in the future for work already performed on the streets of the city, and such an assignment is not unlawful.

Multnomah county: L. B. STEARNS, Judge.

Defendants appeal.    Affirmed.

The facts out of which this controversy has arisen are briefly these:    The defendant Franey and one John E. Woods jointly contracted with the city of East Portland to do the grading and graveling of Twelfth street in said city, and to construct the side and cross-walks thereon.    These parties had a prior arrangement between themselves whereby each was to do certain specified parts of the work without sharing profits or losses with each other.    About July 17, 1889, Woods having substantially completed his part of the work, for a valuable consideration, sold, assigned and trans-ferred in writing to the plaintiff all warrants to be issued by the city of East Portland to Franey and Woods for laying the side and cross-walks in front of and abutting certain specified blocks on said street.    On the 20th day of July, 1890, Woods made a similar sale and assignment of other warrants to be issued for work of the same character in front of other specified blocks on said street to Hall Brothers, who assigned the same to the plaintiff; that thereafter the city of East Portland issued the warrants in controversy in the name of Franey and Woods and left them in the hands of the recorder Llewellyn, who, upon the expiration of his term of office, delivered the same to his successor, the defendant Mayo; that the warrants were not actually issued until Sep-tember, 1889, at which time, by the request of Franey and Woods, separate warrants were issued for the grading and graveling and for the side and cross-walks, and those for grading and graveling were delivered to the defendant Franey in compensation for his part of said work, and those issued for the cross and side-walks, being the warrants now in controversy, were intended for said Woods in payment

for his part of said work.   Another object of this suit was
to enjoin an action at law which Franey had commenced in
the name of Franey and Woods to recover the said warrants
now in controversy, and then in the possession of the
defendant Llewellyn.   The plaintiff had a decree from which
the defendant Franey has appealed to this court.

*R. Citron,* and *James Gleason,* for Apellants.

It is well settled that a person cannot come into equity to
enforce a pure legal demand.   (3 Pom. Eq. Juris. § 1361; 1
Pom. Eq. Juris. §§ 176, 221.)

Plaintiff must clearly show that there is no remedy at
law.   (*Mitchell* v. *Oakley,* 7 Paige, 70; *Savage* v. *Allen,* 54 N.
Y. 463; *Livingston* v. *Livingston,* 6 Johns. Ch. 497, 10 Am. Dec.
353; 27 Cal. 643; 20 How. (U. S.) 156.)

The complaint must set forth the facts how plaintiff was
irreparably injured; a mere statement is not sufficient.   (1
Hill's Code, 418; *City* v. *Baker,* 8 Or. 357; *Ladd* v. *Ramsby,*
10 Or. 211; *Taylor* v. *Welch,* 6 Or. 202; *Crocker* v. *Baker,* 3
Abb. Pr. 183.)

Where want of jurisdiction appears, it is the duty of the
court, at any stage, on its own motion, to dismiss.   (4 Or.
375; 8 Or. 487; *Love* v. *Morrill,* 19 Or. 545.)

Any agreement which in itself contemplates, involves or
requires, or is calculated to induce, a dereliction or laxity in
the performance of the public or private duty of men, is
void.   (Greenh. on Pub. Pol. 308; *Lucas* v. *Allen,* 80 Ky. 682.)

Corrupt intent not necessary to be shown.   (Greenhood,
315-337.)

An employment by or under authority of common council
of a city of one of its members, to render services for the
city, is against public policy, and an action cannot be
maintained against the city to recover for such services rendered.
(*Smith* v. *City of Albany,* 61 N. Y. 444; *Holladay* v. *Patterson,* 5
Or. 180; *Spence* v. *Harvey,* 22 Cal. 336, 83 Am. Dec. 69.)

Before an actual transfer of the property in chattels not
specific can take place, it is in general indispensable that
the subject-matter be made specific.   Until this be done and

the parties are agreed as to the specific identical goods, the contract can be no more than an executory agreement to sell, and the property does not pass. (*Gillet* v. *Hill*, 2 C. & M. 530; *Austin* v. *Craney*, 4 Taunt. 644; *Scudder* v. *Worster*, 11 Cush. 573.)

But if a given number out of the whole are sold, no title is acquired by the purchaser until they are separated and their identity thus ascertained and determined. (*Crofoot* v. *Bennett*, 2 N. Y. 258; 2 Kent Com. 496; *Randolph Iron Co.* v. *Elliott*, 34 N. J. L. 184; 15 Dana (Ky.), 217.)

Franey had partnership lien or equity upon Woods' interest to the amount of Woods' debts on street work. (3 Pom. Eq. Jur. § 1243; 2 Bates on Part. § 820; 1 Lind. on Part. 136, 352.)

The attempted assignment or transfer by Woods to pay private debts was a fraud upon the firm, and void as long as the firm debts remained unpaid. (1 Bates, Part. §§ 405, 410; 1 Lind. Part. 171; *Menagh* v. *Whitewell*, 52 N. Y. 158, 11 Am. Rep. 683.)

*John H. Hall*, and *W. E. Showers*, for Respondent.

Partnership is the result of an agreement to share profits and losses. (Lind. on Part. 10; *Rhines* v. *Feikert*, 92 Ill. 305.)

Admitting that they were in fact partners, one member of the firm has authority to dispose of the fruits of the partnership, and no partnership lien attaches thereto. (Lind. on Part. 146, 169, 352, 353; *McCormick* v. *McCormick*, 7 Neb. 440; *Winship* v. *Bank of U. S.* 5 Pet. 529; *Harris* v. *City of Baltimore*, 17 Atl. 1046, Md.)

There was no such holding out of partnership by either Franey or Woods as to mislead third persons. (Lind. on Part. *44; *Herbert* v. *Callahan*, 35 Mo. App. 498; *Roper* v. *Schaefer*, 35 Mo. App. 30; *Seabury* v. *Bolles*, 51 N. J. L. 103.)

The claim of appellant that the sale by Woods to Stott of a portion of the warrants in controversy is void from public policy, is not maintainable. First, because appellant has not pleaded the same in his answer; and, second, the question cannot be raised in a collateral proceeding where neither the public nor a citizen claims to be injured by reason of the act complained of.

(*Richardson* v. *Welch*, 47 Mich. 309, 11 N. W. Rep. 172; *Atchison & N. R. Co.* v. *Miller*, 16 Neb. 661, 21 N. W. Rep. 452.)

STRAHAN, C. J.—Upon the argument of this cause several objections were made to the plaintiff's right to maintain this suit, which will be separately noticed so far as may be necessary to a proper disposition of this cause. (1) It is first claimed by the appellant that this suit cannot be maintained for the reason its object is purely legal—that is, to recover the possession of the warrants in controversy; but this objection overlooks one element in the plaintiff's case. At the time of the assignment of the warrants they were not in existence, and such assignments therefore could not create a strictly legal title. At most it could only create an equity; that is, a right or interest over which courts of equity have been accustomed to exercise jurisdiction, and in proper cases to protect and make effectual according to the intention and rights of the parties. The principle is stated in 1 Pom. Eq. Jur. § 168, as follows: * * * "The assignee of an expectancy, possibility or contingency acquired at once a present equitable right over the future proceeds of the expectancy, possibility or contingency, which was of such a certain and fixed nature that it was sure to ripen into an ordinary equitable property right over those proceeds as soon as they came into existence by a transformation of the possibility or contingency into an interest in possession. There was an equitable ownership or property in abeyance, so to speak, which finally changed into an absolute property upon the happening of the future event. Equity permitted the creation and transfer of such an ownership." After stating the effect of modern legislation upon this rule, the learned author continues: "Whatever may be the effect of these statutes in abridging or rather in removing occasion for the jurisdiction of equity, it is plain that the jurisdiction must still exist in the cases where a thing in action or demand, purely equitable in its nature, is assigned, and where the assignment itself is equitable, that is, does not operate as an assignment at law, and where any species of possibility or

expectancy not within the scope of the statutes is transferred."
And 2 Am. Law Reg. U. S. 527, recognizes this rule of law.
This ancient head of equity jurisdiction is not destroyed by
any statute that I am aware of, and must therefore still
exist, and I think the case made by the plaintiff falls pre-
cisely within it.  The fact that the plaintiff sought to enjoin
the action at law in no way impairs the jurisdiction of equity.
It is manifest that the complaint, or that part of it which
seeks to lay a foundation for an injunction is wanting in
fullness and particularity of statement, but as we have seen
the complaint would still be sufficient on the other ground
suggested if all relating to the injunction were stricken out.
(2) At the time the plaintiff took the assignments of these
warrants he was president of the common council of the city
of East Portland, and it is claimed that by reason of a par-
ticular provision of the charter of the city, he could acquire
no title to such warrants.  The provision is as follows: "No
member of the common council or any officer of the city
shall be interested in any contract or job the expenses of
which are paid out of the city treasury." (Laws, 1885, 314.)
This is a wise and proper provision, and if we could see that
the assignment of these warrants to the plaintiff made him
interested in the job, within the meaning of this prohi-
bition, it would be our plain duty to turn him out of court
without any kind of redress.  But here the evidence shows
that the contract was completely executed before the assign-
ment.  All the contractors were to do had been performed,
and what the plaintiff did was to take an assignment
which entitled him to receive Woods' part of the warrants.
This fact does not bring the plaintiff within the purpose
of this inhibition or within the letter of the statute.
(3) The defendant Franey does not claim to own these war-
rants, but his contention is that the contract being joint,
Woods bought lumber for side and cross-walks, and is still
indebted therefor, and that a claim is being made against
him for payment, and that Woods' creditor seeks to charge
him as a partner.  Woods and Franey not being partners,

Woods could do no act that would charge Franey as a partner or in any manner render him liable on Woods' account, without his own acquiescence or consent, and the fact that some person may set up a claim against Franey, which, so far as appears, is without foundation, would furnish no reason for taking these warrants, for which the plaintiff and Hall Brothers have paid a full consideration, and turn them over to Franey to indemnify him against such a possibility.

We think the decree of the court below is right, and the same is affirmed.