## In re LINEBERRY.

(District Court, N. D. Alabama, S. D. December 3, 1910.)

### No. 10,579.

1. BANKRUPTCY (§ 288*)—JURISDICTION OF COURT—ADVERSE CLAIMS.

The holder of an assignment of money due a bankrupt from a third person at the date of the bankruptcy is an adverse claimant, and the bankruptcy court is without jurisdiction of a summary proceeding to re-

quire him, over his objection, to submit his claim to the money to such court for decision.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 288.*]

**2. BANKRUPTCY (§ 104*)—LIENS—ASSIGNMENT OF WAGES EARNED AFTER ADJUDICATION—JURISDICTION OF BANKRUPTCY COURT.**

An assignment to secure a debt of wages to be earned in the future creates no lien until the wages have been earned, and where prior to that time the debtor is adjudged a bankrupt, and is subsequently discharged, the debt is extinguished from the date of the adjudication, and no lien arises as to wages earned thereafter, which become the property of the bankrupt, free from the claims of all creditors, including the assignee; and in the meantime, until the question of discharge is determined, the court of bankruptcy has power, under Bankr. Act July 1, 1898, c. 541, § 2, subd. 15, 30 Stat. 545 (U. S. Comp. St. 1901, p. 3421), to protect the rights of the bankrupt by enjoining the assignee from collecting or receiving such wages.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 104.*]

In the matter of A. A. Lineberry, bankrupt. On review of order of referee. Affirmed in part.

W. T. Ward, for petitioner.
J. R. Tate and W. T. Stewart, for bankrupt.

GRUBB, District Judge. This matter comes on to be heard upon a petition filed by the Birmingham Loan & Discount Company to review an order of the referee, requiring it to come into the bankruptcy court and propound its claim to certain wages earned by the bankrupt, and due him from the Southern Railway, and ordered by the referee to be paid into the registry of the court. Part of the wages were earned before and part after the adjudication. As to the part earned before adjudication, the case is ruled by the case of Copeland v. Martin (decided by the Circuit Court of Appeals for this [Fifth] Circuit) 182 Fed. 805, and as to such wages this court is without jurisdiction as to the claimant, and the petition of the bankrupt to that extent should be dismissed, and the rule nisi discharged.

As to earnings after adjudication, the case is different. Such earnings form no part of the bankrupt estate, but belong to the bankrupt. As against dischargeable debts, the bankrupt is to be protected in the enjoyment of them, unless they are affected with a lien at the date of adjudication. In Mosby v. Steele & Metcalf, 7 Ala. 301, the court said:

"It would seem, therefore, entirely reasonable that, in the interval which must elapse between the decree and final hearing for the bankrupt's discharge, he should be permitted to hold property, subsequently acquired, as otherwise he would not be able to support himself and family. * * * Doubtless the bankrupt has an inchoate right to the enjoyment of such property, free from the claims of his scheduled creditors. How is he to be protected in the enjoyment of this right?"

The court there determined that the state chancery court had jurisdiction to stay proceedings to effect a seizure and sale of such property until the bankrupt's right to a discharge was determined, and upon equitable terms to the creditor. The present bankruptcy law (Act

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

July 1, 1898, c. 541, § 2, subd. 15, 30 Stat. 545 [U. S. Comp. St. 1901, p. 3421]) confers adequate power on the bankruptcy court to protect the bankrupt in such a case. It would be a strange procedure for the bankruptcy court to remit its suitor to the state court for such protection, pending the bankruptcy proceedings. The case of In re Hicks (D. C.) 133 Fed. 739, 13 Am. Bankr. Rep. 654, is an authority for the jurisdiction of the bankruptcy court to give such protection.

Upon these premises, the bankrupt, as to earnings acquired after adjudication, would be entitled to the protection of the bankruptcy court, if the claimant's debt is a dischargeable one and was not secured by a lien on subsequently earned wages, at the date of adjudication. The referee has decided that the transaction between claimant and bankrupt constituted a loan, and I am persuaded that his decision is correct. If so, it will be a dischargeable debt. The subsequent earnings of the bankrupt, in that event, should not be subjected to its payment, unless the creditor had a lien on them at the date of adjudication.

An assignment of wages to be earned in the future is, at most, an executory agreement to transfer them when earned. It creates no lien on them, except when and as they come into existence by being earned. At the date of the adjudication, the subsequent wages of the bankrupt had not been earned and were not in existence, and the creditor had no lien on or title to them, by virtue of his assignment, which the bankrupt law could preserve. The bankrupt law does not continue a dischargeable debt for the purpose of permitting a lien to be created after the adjudication, but only to preserve and enforce a lien in existence at the date of the adjudication. The discharge, when granted, relates back to the date of adjudication, and property acquired by the bankrupt, intervening the filing of the petition and the granting of the discharge, is not appropriated to payment of his debts. In support of these views are cited the cases of In re West (D. C.) 128 Fed. 205, 11 Am. Bankr. Rep. 782, Leitch v. Northern Pacific Ry. Co., 95 Minn. 35, 103 N. W. 704, 14 Am. Bankr. Rep. 409, and In re Home Discount Co. (D. C.) 147 Fed. 538, 17 Am. Bankr. Rep. 168. Contra: Mallin v. Wenham, 209 Ill. 252, 70 N. E. 564, 65 L. R. A. 602, 101 Am. St. Rep. 233, 13 Am. Bankr. Rep. 210.

In the case of In re West (D. C.) 128 Fed. 205, 11 Am. Bankr. Rep. 782, the court said:

"The theory of a lien upon the earnings of future labor is not that attaches to such earnings from the moment of contract of pledge or assignment, but from the moment of their existence. It is needless to say that there can be no lien upon what does not exist. A pledge or assignment of future wages under an existing employment is said to create an equitable interest in such wages. Stott v. Franey, 20 Or. 410 [26 Pac. 271] 23 Am. St. Rep. 132. This is true of wages earned upon a general employment, as well as those earned upon a definite contract. In this case the railroad company was under no obligation to employ the bankrupt, nor he to work for the company. If future earnings in such a case can be said to have a potential existence, they are the subject of an agreement for a lien; but the lien, or so-called equitable interest, does not attach until the wages come into existence, and until the lien does attach there is no lien. The discharge in bankruptcy operated to discharge these obligations as of the date of the adjudication, so that the obligations were discharged before the wages intended as security were in existence. The law does not continue an obligation in order that there may be a lien, but only

does so because there is one. The effect of the discharge upon the prospective liens was the same as though the debts had been paid before the assigned wages were earned. The wages earned after the adjudication became the property of the bankrupt clear of the claims of all creditors. Collier on Bankruptcy, 509. These debts cannot escape the operation of the bankruptcy law by an agreement for a lien upon what the debtor expected to earn, but did not earn until after the adjudication in bankruptcy."

The view here expressed is in conformity with the three cases first cited. If its correctness was doubtful, it would be the part of orderly practice in this court to follow the opinion of the senior District Judge until the Circuit Court of Appeals has passed upon the question.

As to wages earned by the bankrupt, after adjudication, an order will be entered, restraining the Birmingham Loan & Discount Company from attempting to collect or from receiving the subsequently earned wages from the railroad company until the expiration of 12 months from the date of adjudication herein, unless the bankrupt shall sooner apply for a discharge, and in such case until the question of such discharge shall be determined.