IRVING TRUST CO. v. ROTH et ux.

In re RHEINAUER–ROTH KNITTING MILLS, Inc.

District Court, S. D. New York.

Oct. 31, 1930.

Lhowe & Obstfeld, of New York City (Emanuel A. Obstfeld, of New York City; of counsel), for plaintiff.

Walter B. Milkman, of Brooklyn, N. Y., for defendants.

PATTERSON, District Judge.

This is a suit to recover alleged preferential payments. The defendant Andrew Roth was the president of the bankrupt corporation and the owner of its entire capital stock. The defendant Olga Roth is his wife. She had worked for the bankrupt corporation for six months prior to bankruptcy, except for several weeks immediately preceding the filing of the petition, when she was ill. The bankrupt company was virtually a one-man organization, engaged in making and selling knit goods. The petition was filed on July 19, 1929. The payments to Andrew Roth complained of total $650, being five separate payments made in the three weeks preceding bankruptcy. The suit is brought on the theory that these payments were on account of a debt due to him from the bankrupt, presumably for salary. The payments to Olga Roth which are complained of cover three amounts paid over to her within a month of bankruptcy. These payments to Olga Roth totaled $1,005.72, and were on account of advances made by her to the bankrupt in May, 1929.

A preference, so far as concerns the present case, is defined by the Bankruptcy Act (section 60 [11 USCA § 96]) to be a payment by a bankrupt, the effect of which will enable one creditor to obtain a greater percentage of his debt than other creditors of the same class; the payment being made within four months of the filing of the petition and at a time when the bankrupt was insolvent. A preference, so defined, is voidable provided the creditor receiving it has reasonable cause to believe that a preference will be the result of the payment.

In this case the issues are, first, the insolvency of the bankrupt at the times when these payments to Andrew Roth and Olga Roth were made; second, whether the effect of the payments to Andrew Roth was to give him a greater percentage of his debt than other creditors of the same class will receive, it being his contention that his claim was for wages as salesman earned within three months before bankruptcy, and therefore, to the extent of $600, a prior claim under section 64 of the Bankruptcy Act (11 USCA § 104); and, third, whether the defendants had reasonable cause to believe that the payments would effect preferences in their favor.

First, as to insolvency at the times of the payments. The defendants insist that the bankrupt was then solvent. There is nothing to support the argument beyond the testimony of Andrew Roth himself and the

figures in the bankrupt's books. As indicating insolvency at the time of bankruptcy, we have the verified statement of Andrew Roth himself in the voluntary petition, to the effect that the liabilities were $29,000 and the assets only $20,000. There is plenty of other testimony in the record to show a condition even more hopeless at the time of bankruptcy. And the inference is a strong one that the corporation was likewise insolvent for at least one month prior to that date. No sudden calamity overtook this business in the final month of its existence. The evidence shows that the company had been doing business at a loss for many months. It had difficulty in raising the money necessary for pay rolls. Bad conditions gradually became worse, and the time came when it could no longer continue in business. I find that the bankrupt was insolvent at the times when these payments to Andrew Roth and to Olga Roth were made.

Second, as to whether the debt owed to Andrew Roth was a claim entitled to priority under section 64. If it was, then payments made by the bankrupt on account of such debt, not in excess of $600, do not constitute a preference to him, for it is not shown by the plaintiff that there are insufficient assets to pay prior claims. But in my opinion the debt owed to Andrew Roth does not fall within the category of wages due to workmen, clerks, salesmen, or servants, and was not a prior claim by virtue of section 64. Roth undoubtedly did perform work in selling goods. But he was much more than a salesman; he was the president, manager, and sole stockholder of the corporation, and did work of all sorts. He was "the whole thing" in the business. Under such circumstances, it would be a plain perversion of the Bankruptry Act and an unwarranted surrender of substance to form to hold that a debt due to such a person for salary, at a rate fixed by him alone, takes precedence over the claims of general creditors. Keyes v. Davie (C. C. A.) 231 F. 688; In re Progressive Luggage Corporation (C. C. A.) 34 F.(2d) 138. I therefore hold that the debt owed to him was no better than a general claim, and that the payments on account of that debt did have the effect of giving him a greater percentage of his claim than other general creditors will receive. As for the payments to Olga Roth, it is undisputed that these were not on account of wages earned, but were in repayment of loans.

Third, as to reasonable cause to believe. I find that this element was present as to each defendant. Andrew Roth was as familiar with the financial condition of the company as if the business had been conducted by him as sole proprietor. Olga Roth claimed to be ignorant and unadvised as to the finances of the company. In view of the fact that she worked for the company for five months shortly before bankruptcy, that she had formerly conducted a business of her own for some years, and in view of the marital relationship, I cannot take this claim at face value. It is highly improbable that her husband did not tell her of the hopeless finances of the company, and likewise it is not natural to suppose that she, a woman of business experience, worked in the business for months without seeing for herself that it was a losing venture.

Finally, it is pleaded as an offset in behalf of Olga Roth that a larger sum than the amounts received by her as payments on account of her loans was owing to her by the bankrupt as wages for her services covering several months. The claim is that she was to receive $75 a week, as well as commissions, for her services. No salary was ever paid to her, however, and the corporate books show no salary account with her. She had never calculated and could not say what her commissions came to. She filed no claim for wages in the bankruptcy proceedings. In view of these facts, the offset will not be allowed.

The plaintiff is entitled to recover from Andrew Roth the sum of $650 and from Olga Roth the sum of $1,005.72, with interest from the dates of the respective payments.